CASE 96—PETITION EQUITY—NOVEMBER 26.

# Hyatt vs. James' adm'r, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A mortgage executed during the war (December 1, 1862), by a citizen of Memphis, Tennessee, to a citizen of Louisville, Kentucky, was illegal and void.

2. A note, as appears upon its face, was executed in Memphis, Tennessee, May 26th, 1862. The record shows that the payee in this note was a citizen of Louisville, Kentucky, December 1, 1862. In the absence of other evidence, the court cannot presume that the payee was a citizen of Louisville on the 26th day of May, 1862.

STITES & BULLITT,                    For Appellant,
                    CITED—
2 *Brightly*, 193.
*Act of Congress of July* 13, 1861.
*Martin vs. Hortin, &c.*
2 *Bush, p.* 398 ; *Anderson's adm'r vs. Whitlock, &c.*

I. & J. CALDWELL and BUNCH & LEE,      For Appellees,
                    CITED—
1 *Duvall*, 20 ; *Laughlin vs. Dean.*
1 *Duvall*, 232 ; *Bland vs. Adams Express Co.*
16 *Johnson's Rep.*, 443 ; *Griswold vs. Waddington.*
1 *Metcalfe*, 402 ; *Morris vs. Doniphan.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

May 26, 1862, the decedent, Thomas James, executed his note to I. L. Hyatt for seven thousand eight hundred dollars, due the next day. The evidence shows that both parties were then in the city of Memphis, Tennessee.

December 1, 1862, James executed to Hyatt a mortgage on real estate in the city of Louisville, Kentucky, to secure the payment of said debt.

In this mortgage it is recited that James is a citizen of Memphis, and Hyatt a citizen of Louisville, and this is the only evidence in the case as to their citizenship, and there is none as to their residence. James having died without paying any part of said debt, Hyatt, on May 17, 1865, filed his petition in the Louisville chancery court to foreclose his said mortgage and for a sale of the land, to which James' administrator was made a party, and by a subsequent amendment his heirs were also made parties.

The administrator, in his original and amended answers, set up for defense that the note was executed in consideration of treasury notes of the Confederate government, which were worthless and illegal, and that it was executed during the war between the Federal government and the insurrectionary States, and whilst the State of Tennessee was in rebellion against the United States government, and that Tennessee was a part of the Confederate government then at war with the Federal government, and that Hyatt was, at both the dates of the note and mortgage, a resident and citizen of Kentucky, and James was a resident and citizen of Tennessee.

John Bates, by petition, became a party, and set up a prior lien, and had his then pending suit against Thos. James also heard with this.

The court dismissed Hyatt's petition, and he prosecutes an appeal. The priorities between Hyatt and Bates not being adjudicated it will not be noticed, as the only question for our determination is, as to the legality of the note and mortgage, and whether judgment thereon should have been rendered against James' administra-

tor and heirs. As Hyatt was in Memphis when the note bears date, the recitals of the mortgage, of more than six months subsequent date, do not establish that he was either a resident or citizen of Kentucky when the note was executed.

These recitals are sufficient evidence of his citizenship at their date, but do not prove that he was a resident of this State at the date of the note. It is averred in the defense that he was both a resident and citizen at the respective dates of the note and mortgage; but as these stand denied, they must be established by proof.

We judicially know, as a part of the public and accredited historical facts of the rebellion, that Memphis was within the Confederate military lines at the date of the note, and was in Federal military occupation at the date of the mortgage.

After due consideration, we have at the present term, in the cases of *Martin vs. Horten et al., and Anderson's adm'r vs. Whitlock and Johnson,* held that the circulation of Confederate currency within the Confederate military lines which had extended over a portion of the territory of this State, by citizens of the State resident within such military lines, was not illegal. That the citizen was not bound to flee his home and property, but might abide and conform to the rules and regulations of the military authorities of the enemy, until his own government might have the power and inclination, and actually oust that enemy, and afford him its own protection; much more would the circulation of Confederate currency be wanting in illegality and viciousness between citizens who resided within a seceded State, which was then a member of the Confederate government—the policy of which was to encourage and facilitate the circulation of

its own currency, and to prevent the circulation of the currency of its adversary.

The evidence shows, that, at the date of the note, the Confederate currency had an actual market value at Memphis exceeding the value of the Federal currency, and that James bought with it cotton at from eight to ten cents per pound.

In the absence of proof, to presume that Hyatt was either a resident of or citizen of Kentucky at the date of the note, would be to infer that his residence and citizenship were different from his then locality, and to presume that a contract was illegal without evidence to show its viciousness.

But, whilst we will not infer that the note was given without any valuable consideration, nor that the consideration was illegal, yet the recitals of the mortgage show that Hyatt was, at its date, a citizen of Kentucky, whilst the mortgagor was a citizen of Tennessee.

The act of Congress of July 13, 1861, provided, that in States repudiating the authority of the United States, that " it may and shall be lawful for the President, by proclamation, to declare that the inhabitants of such State, or any section or part thereof, where such insurrection exists, are in a state of insurrection against the United States ; *and thereupon all commercial intercourse, by and between the same and the citizens thereof and the citizens of the rest of the United States, shall cease and be unlawful so long as such condition or hostility shall continue.* * * * * * *Provided, however,* That the President may, in his discretion, license and permit commercial intercourse with any such part of said section." (2 *Brightly's Digest,* 193.) The President of the United States had, previous to the date of said mortgage, issued his proclamation declaring the State of Tennessee to be in a state of insurrection,

and forbidding all commercial intercourse between her inhabitants and those of the States adhering to the gov-- ernment, unless by license from the treasury department. There is no evidence that any license had issued, or even that a military permit had been granted to authorize this mortgage, or any authority for the mortgagor and mortgagee to deal with each other.

Mr. Wheaton, in his *International Law, page* 556, *section* 15, lays it down, that " it follows, as a corollary from the principal interdicting all commercial and other pacific intercourse with the public enemy, *that every species of private contract made with* his subjects *during the war is unlawful.*"

It is said by *Duer on Insurance, volume* 1, *page* 478, that " a vested right, under a subsisting contract, is not affected by a subsequent war; but where the contract is executory, and would have been illegal if made in time of war, it becomes so, from the time hostilities commence, *as to all acts to be performed by either party during the war.*"

And Mr. Lawrence, in his edition of Wheaton, quotes, as part of note 176 to the above quoted text, from an opinion of the Attorney General of Louisiana, declaring that a power of attorney executed in New York, after the commencement of the war, and without any license, to transfer bank stock in one of the New Orleans banks, was illegal and void.

Even had this note existed before the war, so as to free its legality from all doubt, still, under the act of Congress and the principles as recognized by Wheaton and Duer, this mortgage would have been illegal and void. And these principles are sanctioned by Judge Treat, of United States district court for Missouri, in the *United States vs. One hundred and twenty-nine packages* (11 *American Law Reg.*, 419).

It follows, therefore, that the court erred in the dismissal of the appellant's petition as to the note, but should have rendered judgment thereon, as the mortgagor's administrator had personally appeared in the case; and for this reason alone the judgment must be reversed; but as to the mortgage, the dismissal was right.

Wherefore, the judgment is reversed, with directions for further proceedings in accordance herewith.